DECISION AND JUDGMENT ENTRY
{¶ 1} Michelle L. Leonard ("Mother") appeals the judgment of the Pike County Court of Common Pleas, Juvenile Division, modifying the shared parenting plan for the minor child Miller Daniel Beekman ("Miller") to designate Scott M. Beekman (Father) as the residential parent for school placement purposes. Mother alleges that the trial court erred in modifying the shared parenting plan without first finding a change in circumstances, and that the trial court abused its discretion by giving undue weight to Miller's wishes regarding where he wanted to reside. Because we find that, pursuant to R.C. 3109.04(E)(2)(b), the trial court may modify the terms of a shared parenting plan based solely upon the best interest of the child, we find that the trial court did not err in failing to make a finding that a change in circumstances occurred. Further, we find that the trial court properly considered the factors enumerated in R.C.3109.04(F)(1)(d) for determining the child's best interest, and that the trial court did not abuse its discretion in placing greater emphasis on the child's wishes than it placed upon the child's adjustment to home, school and community. Accordingly, we overrule Mother's two assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} Mother gave birth to Miller on October 15, 1995. Mother and Father have never been married to each other. In March 1997, while Mother and Father lived together, they entered into a shared parenting plan, which the trial court subsequently approved. Pursuant to the terms of the shared parenting plan, the parties were to have equal companionship with Miller. Additionally, the plan provided that because they were living together, and both Mother and Father were contributing to Miller's care, neither parent was required to pay child support, although both parents were to be jointly and severally liable for all of Miller's health related costs.
 {¶ 3} Several months after they entered into the shared parenting plan, Mother and Father ceased to live together, although both parties continued to reside in Athens, Ohio. The record reflects that Mother and Father continued to work together to arrange a companionship schedule that was acceptable to both parties. This arrangement continued until Mother relocated to Forest Park, Ohio with her husband and Miller. The record reflects that Forest Park is approximately a 3½-hour drive from Athens. Shortly thereafter, Father relocated to Fairfield, Ohio in order to be closer to Miller.
 {¶ 4} While Father lived in Fairfield, he worked as a teacher in a pre-kindergarten classroom. During Father's lunch hour, he was able to pick Miller up from kindergarten and take him to his place of employment each afternoon. Miller participated in Father's classroom during the afternoons until the school closed at 6:30 p.m. Father returned Miller to his Mother's home at either 7:00 p.m. or 8:00 p.m. depending upon mother's work schedule. Additionally, Father exercised companionship on alternating weekends.
 {¶ 5} In August 2002, Mother moved from Forest Park to Fairfield, Ohio, and Father returned to Athens to take advantage of an employment opportunity at Ohio University. Due to the distance between Mother and Father's respective homes, and due to the fact that Father's new job would permit him to arrange his schedule to care for Miller both before and after school, Father filed a motion to terminate the shared parenting decree, or, in the alternative, to modify the shared parenting plan. Father sought to be named Miller's residential parent for school placement purposes, grant Mother companionship three out of every four weekends, and equitably divide holiday and summer companionship time.
 {¶ 6} Mother responded by filing a motion to terminate the shared parenting plan, in which she sought sole custody of Miller, child support and attorney fees. Additionally, Mother had previously filed a Petition for Custody in the Juvenile Court of Hamilton County, Ohio, which she subsequently dismissed.
 {¶ 7} The trial court conducted a hearing upon the parties' motions on October 22 and December 17, 2002, and January 24, 2003. On January 31, 2003, the trial court issued a decision and judgment entry. The trial court found that until the Father's return to Athens, the parents had been able to have equal companionship with Miller as required by their shared parenting plan. The trial court noted that, at the time of its decision, both parents requested that the court modify, rather than terminate, the shared parenting plan.
 {¶ 8} The trial court determined that, pursuant to R.C.3109.04(E)(2)(b), it had to find that a modification of the shared parenting plan was in Miller's best interest. In determining Miller's best interest, the trial court noted that it interviewed Miller regarding his wishes and concerns, at Father's request. While the trial court noted that Miller "seemed immature and somewhat uncomfortable with the process[,]" the court found that Miller "ha[d] sufficient reasoning ability to express his wishes and concerns, and that there were "no special circumstances that would lead the Court to conclude that it would not be in the child's best interest to determine his wishes and concerns."
 {¶ 9} In determining Miller's best interest, the trial court found that the child's wishes favored the father, and the child's adjustment to his home, school and community favored the mother. The other factors enumerated in R.C. 3109.04(F)(1) either were not significant, or favored the parents equally. The only factor the trial court found that might weigh against shared parenting was R.C. 3109.04(F)(2)(d), the geographic proximity of the parents as it relates to the practical concerns of shared parenting. Accordingly, the trial court concluded that it was in Miller's best interest to modify the parties shared parenting plan. The court named Father the residential parent for school placement purposes beginning with the 2003-2004 school year with Mother having companionship on weekends, except for one weekend per month. The court ordered the parties to equitably share the summer and holidays.
 {¶ 10} Mother appealed, raising the following assignments of error: "The Court erred in finding that an immature seven-year-old child, with numerous psychological issues had the ability to adequately state his wishes regarding where he wished to reside. The court erred in giving that factor more weight then (sic) any other factor enumerated in ORC 3109.04. In addition, the Court erred in modifying the Shared Parenting Plan without first finding a change in circumstances."
 II. {¶ 11} In her brief, Mother states her assignment of error regarding the trial court's failure to find a change in circumstances as her second assignment of error. However, she proceeds to discuss it as her "FIRST ISSUE[.]" Accordingly, we address Mother's second assignment of error first.
 {¶ 12} Mother argues that the trial court could not modify the parties shared parenting decree without first finding that there was a change of circumstances since the time of the shared parenting decree. R.C. 3109.04(E)(1)(a) provides, in relevant part: "* * * the Court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child * * * and that the change is necessary to serve the best interest of the child." However, the trial court clearly stated that it modified the shared parenting plan pursuant to R.C. 3109.04(E)(2)(b).
 {¶ 13} A trial court's interpretation and application of a statute is a question of law that we review de novo, giving no deference to the trial court's determination. State v. Sufronko
(1995), 105 Ohio App.3d 504, 506.
 {¶ 14} We have previously found that R.C. 3109.04(E)(2) governs a request for modification of a shared parenting plan.Price v. Price (2000), Highland App. No. 99CA12, fn. 1. "[A] court may terminate or modify a prior shared-parenting decree if it determines that termination or modification of the shared-parenting plan is in the best interest of the child. According to the statute, this determination may be made without a preliminary determination into whether there was a change in circumstances of the child, his residential parent, or either of the parents subject to the shared-parenting decree. See R.C.3109.04(E)(2)(b) and (c)." Patton v. Patton (2001),141 Ohio App.3d 691, 695. Thus, the plain language of the statute permits modification of a shared parenting plan upon a finding that the proposed modifications are in the best interest of the child, and does not require a finding that the child's circumstances have changed since the prior decree.
 {¶ 15} Because the judgment entry of the trial court merely changes the designation of the residential parent for school placement purposes, and does not affect the status of either parent as the residential parent and legal custodian of the child, it does not affect the legal rights of either parent nor does it involve a reallocation of parental rights. Porter v.Porter (2002), Summit App. No. 21040, 2002-Ohio-6038, ¶ 8. See, also, R.C. 3109.04(K)(6) (7) (the designation of one parent as residential parent for school placement purposes does not affect the designation of each parent in a shared parenting order as the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child.)
Therefore, we find that the trial court properly interpreted and applied R.C. 3109.04(E)(2)(b) to the requested modification of the parties' shared parenting plan. Accordingly, we overrule Mother's second assignment of error.
 III. {¶ 16} In her first assignment of error, Mother argues that the trial court abused its discretion in relying upon Miller's wishes due to his immaturity, alleged evidence of improper persuasion by Father, and Miller's psychological issues.
 {¶ 17} In domestic relations matters, a trial court has broad discretion to do what is equitable under the facts and circumstances of each case. See Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. Reviewing courts should afford the utmost deference to a trial court decision regarding child custody matters. See, e.g., Miller v. Miller (1988), 37 Ohio St.3d 71,74. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219; Booth v. Booth
(1989), 44 Ohio St.3d 142, 144.
 {¶ 18} We must give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. So long as there is some competent, credible evidence going to all of the essential elements of the case, we will not disturb a trial court's judgment as being arbitrary. Masitto v.Masitto (1986), 22 Ohio St.3d 63, 66; See C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 19} Here, after reviewing all of the factors enumerated in R.C. 3109.04(F)(1) to determine the child's best interest, the trial court found that the child's wishes favored Father (R.C.3109.04(F)(1)(b)), and the child's adjustment to his home, school and community favored Mother (R.C. 3109.04(F)(1)(d)). The trial court expressly stated that the other factors enumerated in R.C.3109.04(F)(1) either were not significant, or favored the parents equally. The trial court also found that both parents were suitable and that Miller would be well cared for regardless of which parent the court named as residential parent for school placement purposes. The trial court concluded that it would be in Miller's best interest to designate Father as the residential parent for school placement purposes. Thus, the trial court gave more weight to Miller's wishes than it gave to his adjustment to his home, school and community.
 {¶ 20} At Father's request, the trial court conducted an interview with Miller pursuant to R.C. 3109.04(B)(1). Although the trial court stated that Miller, who was seven years old at the time of the interview, "seemed immature and somewhat uncomfortable with the process[,]" pursuant to R.C.3109.04(B)(2)(b), the trial court found that he had sufficient reasoning ability to express his wishes and concerns. In further compliance with R.C. 3109.04(B)(2)(b), the trial court found that there "[were] no special concerns that would lead the Court to conclude that it would not be in the child's best interest to determine his wishes and concerns." Accordingly, we find that the trial court followed the statutory requirements in determining Miller's wishes and concerns with regard to his living and schooling arrangements.
 {¶ 21} Mother argues that the trial court's statement that Miller "seemed immature and somewhat uncomfortable with the process" is inconsistent with the weight the trial court gave to Miller's stated wishes. Mother also argues that the trial court's decision "[was] solely based upon the reason that the child has sufficient reasoning ability to express his wishes and concerns." We note that Miller was seven years old at the time the trial court interviewed him. Therefore, it is not surprising that he would be uncomfortable as he met with the judge whom he knew would be determining where he lived and went to school. We also note that R.C. 3109.04(B)(2)(b) speaks of the child's reasoning and ability to express his concerns, not of his overall maturity level. Thus, the fact that the trial court found Miller to be "immature" does not necessarily preclude the court from finding that he also possessed the requisite reasoning ability to express his wishes. Because the statute specifically directs the trial judge to determine whether the child possesses sufficient reasoning ability to express his wishes or concerns, we cannot say that the trial court abused its discretion in relying upon Miller's reasoning ability as opposed to his maturity level.
 {¶ 22} Mother argues that the trial court failed to consider Miller's "physical and psychological problems," including allegations of urinating in his clothing during visitations with his father, defecating in his clothing at school, threatening to kill another child, and the fact that Miller had been seeing a therapist for two years before the hearing. In her brief, Mother cites a passage of the transcript in which she claims Father admitted Miller wet his pants during Father's visitations. However, our review of the transcript reveals that, in this passage, Father admits that he was only aware of one incident when Miller had a bowel movement in his pants at school. Further, the note from the school nurse, admitted as Mother's Exhibit C, reflects that at the time of that incident, Miller told the school nurse he had a little diarrhea, and that Miller had a change of underwear in his school bag.
 {¶ 23} While Mother testified that Miller had "a lot" of accidents during the pendency of this action, both when he was well, and when he was sick with diarrhea, the trial court was in the best position to weigh the credibility of the testimony. Here, the trial court could have reasonably concluded that Mother's testimony was not credible, or that Miller's accidents were due to illness or the transient stress of the pending court case, rather than a deep-seated psychological problem.
 {¶ 24} Mother also testified that she started taking Miller to see a therapist after his school principal informed her that Miller had threatened to kill another student. Mother's testimony regarding the principal's statement, which explains her actions after hearing the statement, was offered and admitted to show why she acted in a particular manner rather than to prove the truth of the statement. Therefore, for that purpose, Mother's testimony regarding the principal's statement to her is not hearsay. Statev. Maurer (1984), 15 Ohio St.3d 239, 262. However, we note that Mother presented no evidence to prove the truth of the principal's statement. The principal did not testify, nor did Mother present any testimony of the psychological professionals who were treating Miller. Hence, there was no evidence in the record, other than Mother's own testimony to demonstrate that Miller made such threats or actually suffered from any psychological disorder.
 {¶ 25} Mother also argues that Father asserted undue influence upon Miller immediately prior to his second meeting with the judge, and that Miller was improperly present in the courtroom during a full day hearing. In her brief, Mother states that Miller had lunch with Father, and then requested to speak with the judge a second time. However, in his interview with the trial court, Miller stated that he had lunch with his maternal grandmother and a friend of his Mother's. When the hearing resumed, the trial court inquired as to whether Mother had a friend present that day, and whether that friend accompanied Miller to lunch. Mother stated her friend's name on the record, and indicated that her friend had lunch with Miller around eleven o'clock.
 {¶ 26} Additionally, we note that, while the record does not specifically reflect whether Miller was present in the courtroom during the hearing, the transcript does reflect that Miller asked the trial court if he could stay and hear what was going on. The transcript also reflects that the trial court told Miller that he probably would not be able to stay, although he might be able to come back to the courtroom after the hearing was over. Accordingly, we find no merit in mother's argument that Father unduly influenced Miller immediately before his speaking with the judge, or that Miller was improperly present in the courtroom during the proceedings before the trial court.
 {¶ 27} Based upon the foregoing, we cannot say that the trial court abused its discretion in finding that Miller had sufficient reasoning ability to express his wishes and concerns, and that there were no special concerns that would lead the Court to conclude that it would not be in the child's best interest to determine his wishes and concerns.
 {¶ 28} The trial court's decision clearly states that all of the factors enumerated in R.C. 3109.04(F)(1) weighed equally in favor of both parents or were not applicable to the facts of this case, except R.C. 3109.04(F)(1)(b), the child's wishes, favored Father, and R.C. 3109.04(F)(1)(d), the child's adjustment to his home, school and community, favored Mother. Thus, the trial court's decision came down to which of the two factors the trial court found to be more compelling.
 {¶ 29} In his interview with the trial court, Miller repeatedly stated that he wished to live with Father. Miller previously resided with his mother for school placement purposes and was involved in school, Cub Scouts, Tae Kwon Do, and T-ball. However, the trial court could have reasonably concluded that Miller was not deeply rooted to his mother's community in that, at the time of the trial court's decision, he had only lived in the Cincinnati area for approximately a year and a half. When Mother originally moved to the Cincinnati area, she lived in Forest Park for approximately one year, and Miller completed Kindergarten there. Then Mother moved to Fairfield, Ohio in August 2002. Therefore, at the time of the hearing, Miller was attending, but had not yet completed, his first grade year in the Fairfield school system.
 {¶ 30} Contrary to Mother's allegation, the trial court did not state or imply that the shared parenting agreement should terminate in favor of Mother. The trial court stated that of the factors enumerated in R.C. 3109.04(F)(2), only one factor of 5,might militate against shared parenting. The court noted that factor (d), the geographic proximity of the parents as it relates to the practical concerns of shared parenting, might present problems. However, the trial court ultimately concluded that continuing the shared parenting arrangement and designating Father as the residential parent for school placement purposes served Miller's best interest.
 {¶ 31} Based upon the foregoing, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in modifying the shared parenting plan and designating Father as Miller's residential parent for school placement purposes. Accordingly, we overrule Mother's first assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Harsha, J. and Evans, J.: Concur in Judgment Only.