**FISHER, Appellant,**

v.

**HASENJAGER, Appellee.**

[Cite as *Fisher v. Hasenjager,* 168 Ohio App.3d 321, 2006-Ohio-4190.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–05–14.

Decided Aug. 14, 2006.

322

James M. Dodson, for appellant.

Thomas Luth, for appellee.

ROGERS, Judge.

{¶ 1} Petitioner-appellant, Paul Fisher, appeals the judgment of the Mercer County Court of Common Pleas, Juvenile Division, which designated petitioner-appellee, Emma Hasenjager, as the residential parent and legal custodian of the parties' minor child. On appeal, Fisher asserts that the trial court erred when it terminated his custodial rights under the shared-parenting plan and designated Hasenjager as the residential parent and legal custodian of their minor child. Finding that the trial court was able to modify a shared-parenting decree, under

R.C. 3109.04(E)(2)(b), upon the request of both parties and on its determination that the modification was in the best interest of the parties' minor child, and that the trial court did not abuse its discretion when making that determination, we affirm the judgment of the trial court.

{¶ 2} On October 10, 2002, Hasenjager gave birth to Demetra Hasenjager. In March 2003, Fisher and Hasenjager petitioned to adopt an administrative finding of paternity, which concluded that Fisher was the father of Demetra, and to establish visitation, health insurance, support, and tax exemptions. On March 24, 2003, Fisher and Hasenjager entered into a consent judgment entry that established, among other things, that Fisher was the father of Demetra and that Hasenjager was the residential parent and legal custodian of Demetra.

{¶ 3} In August 2003, Fisher moved to modify his parental rights and responsibilities. Fisher requested a change of custody and temporary orders to become the residential parent and legal custodian of Demetra. Fisher based his motion on his knowledge that Hasenjager used drugs and alcohol and on his concerns over Demetra's safety. In September 2003, the trial court issued temporary orders whereby both parties were ordered to attend mediations, refrain from drug and alcohol use, complete drug and/or alcohol counseling, and participate in drug screening every two weeks.

{¶ 4} In November 2003, the parties attended mediation and entered into a mediated agreement. The mediated agreement modified their March 2003 parenting agreement. As part of the modification, the parties agreed to enter into a shared-parenting arrangement, with the allocation of parental rights and responsibilities shared equally, and a different visitation schedule. The parties also agreed that the amount of child support would remain unchanged and that they would exchange any and all information pertaining to Demetra's best interest. Further, the parties agreed to contact each other as the first option for babysitting and that the other parent had the right of first refusal on babysitting. Also, if neither of them was available for babysitting, the parties agreed to choose from a list of people provided in the agreement as potential babysitters. Both parties also agreed to follow all recommendations generated from their drug and alcohol assessment, to sign a release of information in order to obtain verification of the other parent's compliance, and to have the ability to request, in writing, a drug screening of the other parent to be done within 72 hours of receipt of that request. Both parties also agreed to split the costs of the mediation, to consider mediation in lieu of court when they were unable to successfully resolve issues as a result of their own efforts, and to attempt to schedule physician appointments so both of them could be present. In December 2003, the trial court adopted the parties' shared-parenting agreement with some minor clarifications.

{¶ 5} On January 11, 2005, Hasenjager moved to hold Fisher in contempt for failing to follow the plan when he failed to return Demetra for her parenting time and refused to honor her right to provide child care for Demetra. Fisher could not be served with the summons because he no longer resided at the address he provided to the court. However, the trial court proceeded and temporarily appointed Hasenjager as "legal custodian [of Demetra] until further order of the court." Also on January 11, 2005, Fisher filed a motion for modification of parental rights and responsibilities, stating that Hasenjager's substance-abuse problems put Demetra in danger of being neglected or injured. Specifically, Fisher stated that Hasenjager, at 2:00 AM on December 24, 2004, when she was scheduled for parenting time beginning at 7:00 AM that morning, totaled her car and was cited for OVI with a blood-alcohol level of .207 grams of alcohol per 210 liters of breath. Additionally, Fisher stated that he had witnessed Hasenjager having a glass of wine at 10:00 AM on a day when he was picking up Demetra.

{¶ 6} Subsequently, the trial court modified its temporary custody order of January 11, 2005. Specifically, the trial court ordered Fisher and Hasenjager to, among other things, resume their shared-parenting plan adopted in December 2003 and to refrain from consuming alcohol and all illegal substances within 12 hours prior to and during parenting time with Demetra. In February 2005, Hasenjager moved to become sole residential parent and legal custodian of Demetra and to be awarded attorney fees and court costs. In March 2005, all pending matters came before the trial court and a hearing was held. At the hearing, the following testimony was heard:

{¶ 7} Hasenjager testified that the parties have a shared-parenting agreement, and under the agreement, she has parenting time every Monday and Wednesday and on alternating weekends from Friday to the following Monday and has the first option for babysitting on Fisher's parenting time if he has to work. Hasenjager testified that on December 27, 2004, Fisher dropped off Demetra at her residence and then immediately returned, stating that he had changed his mind, and proceeded to remove Demetra. Hasenjager testified that despite many requests, Fisher did not return Demetra until the court ordered Demetra's return on January 11, 2005.

{¶ 8} Hasenjager further testified that she had a good relationship with Demetra and that Demetra had a good relationship with her half sister, Dethora. Also, Hasenjager noted that at her residence, Demetra and Dethora had their own bedrooms. Hasenjager also expressed concern about the atmosphere created when Fisher picked up or dropped off Demetra for parenting time, alleging that Fisher would denigrate her, call her obscene names, and flip her off in front of Demetra. Hasenjager maintained that she felt it was important for Demetra to be close to and have a good relationship with her father. Hasenjager also felt

that the alternating parenting time was in Demetra's best interest; however, she was concerned about Fisher's abusive verbal behavior towards her in front of Demetra. Additionally, Hasenjager felt that she and Fisher needed to improve communication and was willing to enter counseling with him for Demetra's best interests.

{¶ 9} Finally, Hasenjager testified that she had been involved in an automobile accident in December 2004 and that alcohol had been a factor in that accident. However, Hasenjager testified that Demetra was not with her at the time of the accident and that she had never consumed alcohol and driven with Demetra. Hasenjager admitted that due to the fact that she had gone to bed so late after the accident, she was unable to hear Fisher bringing Demetra at 7:00 AM or hear her telephone ring until 8:30 AM. Hasenjager further testified that on one occasion, when Fisher was dropping off Demetra, she came to the door with her bed cover wrapped around her and stood behind the door when she opened it to allow Demetra to come in. Hasenjager also testified that she does not use illegal drugs.

{¶ 10} Bobbie Fledderjohann, a counselor and clinical director at Gateway Outreach, testified that she had diagnosed Hasenjager with chemical abuse, but not chemical dependence. Specifically, Fledderjohann testified that Hasenjager had abused marijuana and alcohol, but she did not find Hasenjager to be chemical or alcohol dependent. Also, Fledderjohann testified that she did not have any concern about Hasenjager's ability to care for Demetra.

{¶ 11} Fisher testified that he was concerned about Hasenjager's accident in early December 2004. Also, Fisher testified that one time when dropping off Demetra for parenting time, Hasenjager came to the door without any clothes on, except for a robe. Fisher also stated that one morning, while picking up Demetra, he had seen a bottle of wine with a glass of what he thought was wine on a table in Hasenjager's residence. Fisher was concerned that Hasenjager was reverting to a lifestyle that he felt was dangerous to Demetra.

{¶ 12} Fisher admitted that he had taken Demetra and not returned her for Hasenjager's parenting time until he was notified that the Sheriff's Department had received a court order for Demetra's return. Fisher further admitted that he had not given Hasenjager the opportunity to care for Demetra on the days that he worked. Fisher testified that he had previously notified Hasenjager that Demetra's paternal grandmother would babysit for Demetra during the Christmas holiday. Additionally, Fisher testified that Demetra's paternal grandmother was caring for her other grandchildren during the Christmas holiday; however, Fisher admitted that someone else had babysat for Demetra during the time he kept Demetra from Hasenjager. Fisher also admitted that he had refused to tell Hasenjager where Demetra was. With respect to Fisher's statements, the trial

court stated, in its judgment entry, "[Fisher] did not show nor admit to any remorse for the concern or anxiety [Hasenjager] felt. Nor did he indicate he felt he was wrong for deciding on his own to take his child away from [Hasenjager]. [Fisher] did not exhibit any concern about having violated the shared parenting agreement."

{¶ 13} Additionally, Fisher testified that he and Demetra had a good relationship and that Demetra had her own room at his residence. Fisher also noted that during his parenting time, Demetra does not play with other children because he moved into a quiet apartment complex that had mainly older tenants; however, he felt that the location would be calmer for his daughter. Fisher also testified that Demetra has a good relationship with her paternal relatives and often visited with them.

{¶ 14} The trial court also noted in its journal entry that "[i]n response to questioning as to whether he would participate in counseling, [Fisher] reacted very negatively. He stated it would not do any good; stated he and mother do not agree on most things. [Fisher] indicated he would obey a direct court order to get counseling but he was not sure where his and mother's relationship was going."

{¶ 15} After hearing the testimony of the parties, the trial court found that Fisher unilaterally denied custody to Hasenjager when a shared-parenting decree was in existence, based on vague fears that Hasenjager might be reverting to a dangerous lifestyle. The trial court also noted that Fisher did not take the appropriate steps to obtain court approval to deviate from the shared-parenting order. As a result, the trial court, based on the criteria set forth in *Snyder v. Snyder* (Aug. 21, 1998), 3rd Dist. No. 14–98–22, 1998 WL 546578, found Fisher in contempt for violating the court's order and sentenced Fisher to ten days in the Mercer County Jail. The trial court also allowed Fisher to purge the finding of contempt by obeying the court's orders in the future.

{¶ 16} Additionally, the trial court found that the parties had requested, and that it was in Demetra's best interests, to terminate the shared-parenting plan the parties previously entered. Further, the trial court stated, "The court in allocating parental rights and responsibilities has also considered the criteria under Section 3109.01(F)(1)(a) through (j) and other relevant factors in reaching its decision. [Hasenjager] is hereby designated the residential parent and legal custodian of the parties [sic] minor child, Demetra." Also, the trial court advised Fisher of his allotted parenting time and gave him the option of babysitting for Demetra on Fridays if he was not working and Hasenjager was. Further, the trial court ordered that both parties shall refrain from any abuse of alcohol or drugs while Demetra was with them; that the parties refrain from arguing in front of Demetra; that Fisher shall not verbally abuse Hasenjager in front of

Demetra or make threatening gestures; and, that both parties shall encourage Demetra to love and respect the other parent. The trial court also encouraged the parties to enter into counseling for Demetra's best interests, but refrained from ordering the counseling because of Fisher's unwillingness to participate. Additionally, the trial court deferred the determination of child support pending the submission of financial information. Finally, the trial court stated, "All other orders not in conflict with the above shall remain in full force and effect." Subsequently, the parties submitted the requested financial information, and the trial court determined the child-support requirements of both parties.

{¶ 17} It is from this judgment that Fisher appeals, presenting the following assignment of error for our review:

The trial court abused its discretion and its decision was against the manifest weight of the evidence when it terminated plaintiff/appellant's custodial rights under the shared parenting plan and designated defendant/appellee as the residential parent and legal custodian of the minor child.

{¶ 18} In his assignment of error, Fisher argues that the trial court erred when it designated Hasenjager as the residential parent and legal custodian of Demetra. Specifically, Fisher contends that the trial court did not properly find and hold that a substantive change in circumstances had occurred to justify a termination of the parties' shared-parenting plan. Additionally, Fisher maintains that the trial court did not properly find and hold that the change in custody was in Demetra's best interests, that the trial court did not properly find and hold that any harm caused by a change in custody would be outweighed by the benefits of changing the custody, that the manifest weight of the evidence demonstrates that the shared-parenting plan should not have been terminated, and that if it was terminated, he should have been designated residential parent. Finally, Fisher argues that the trial court erred when revising child support by not giving him the right to claim Demetra as an exemption for all income tax purposes. For the following reasons, we disagree with all of Fisher's arguments.

{¶ 19} An appellate court's review of the interpretation and application of a statute is de novo. *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721, 756 N.E.2d 1258; *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596. Additionally, an appellate court does not defer to a trial court's determination when making its review. Id. "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319. In order to determine the legislative intent, a court must first look to the statute's language. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457. "Whether a statute is mandatory or directory is to be ascertained from a consideration of the entire act, its nature, its object, and the consequences which would result from construing it one way or

the other." *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611. Additionally, particular provisions of a statute may be discretionary, while others may be mandatory. *Schmidt v. Weather–Seal* (1943), 71 Ohio App. 387, 389, 26 O.O. 322, 50 N.E.2d 362.

{¶ 20} We begin by noting that the trial court found that the parties requested and that it was in Demetra's best interests *to terminate* the parties' shared-parenting plan without providing any guidance as to which section of the Revised Code it applied. The lack of a statutory section, specifically in cases in which a trial court is modifying or terminating a shared-parenting plan, is extremely important, because multiple provisions within the Revised Code allow a trial court to modify or terminate such a plan.

{¶ 21} One source of authority for a trial court to modify an existing custody decree is provided in R.C. 3109.04(E)(1)(a), which requires a court to find a change in the circumstances of the child, residential parent, or either parent subject to the shared-parenting decree before a decree allocating parental rights and responsibilities for the care of the children may be modified. R.C. 3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 22} In addition to modifications authorized under R.C. 3109.04(E)(1), parental rights and responsibilities, as specified in a shared-parenting decree, may be modified under R.C. 3109.04(E)(2)(a) and (b). R.C. 3109.04(E)(2)(a) and (b) provide:

In addition to a modification authorized under division (E)(1) of this section: (a) Both parents under a shared parenting decree jointly may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree. Modifications under this division may be made at any time. The modifications to the plan shall be filed jointly by both parents with the court, and the court shall include them in the plan, unless they are not in the best interest of the children. If the modifications are not in the best interests of the children, the court, in its discretion, may reject the modifications or make modifications to the proposed modifications or the plan that are in the best interest of the children. Modifications jointly submitted by both parents under a shared parenting decree shall be effective, either as originally filed or as modified by the court, upon their inclusion by the court in the plan. Modifications to the plan made by the court shall be effective upon their inclusion by the court in the plan.

(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 23} Further, in addition to the modifications authorized under R.C. 3109.04(E)(1) and (E)(2)(a) and (b), a trial court is authorized to terminate a final shared-parenting decree under R.C. 3109.04(E)(2)(c).[1] R.C. 3109.04(E)(2)(c) provides:

(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under

---

1. After a court has terminated a shared-parenting decree under R.C. 3109.04(E)(2)(c), "the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d).

division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

{¶ 24} In order to apply the appropriate statute to the case sub judice, we first must determine whether the trial court actually "terminated" or merely "modified" the parties' shared-parenting plan in its April 2005 judgment entry. Looking at the parties' motions and trial court's judgment entry, we find that the trial court modified the parties' plan. We reach this conclusion for the following reasons. First, the trial court found that both parties requested a termination of the plan; however, upon our review of the parties' motions, both Fisher and Hasenjager actually moved to be designated the sole residential parent and legal custodian of Demetra, not to terminate the shared-parenting plan. Since both parties previously agreed to equally allocate the parental rights and responsibilities of Demetra, the trial court's finding "terminates" or removes this specific term or provision of the plan and replaces it with a term or provision stating that Hasenjager is the residential parent and legal custodian of Demetra. In essence, the trial court has modified the parties' shared-parenting plan, when it named Hasenjager Demetra's residential parent and legal custodian. Additionally, this conclusion is further supported by the trial court's decision to leave "all other orders not in conflict with the [modifications it made] in full force and effect." This shows that the trial court intended to keep the remaining terms of the plan in effect and enforceable. Finally, Hasenjager moved for clarification in April 2005 to determine whether after the trial court's April 2005 judgment entry, she still had the first right of refusal to provide child care to Demetra, which she agreed to in November 2003. The trial court confirmed that Hasenjager's first right of refusal was not in conflict with its April 2005 decision and that her right was still in full force and effect, reflecting that the trial court did not intend to terminate the entire plan. Accordingly, the trial court could not have applied R.C. 3109.04(E)(2)(c), because it did not terminate, but modified the shared-parenting plan.

{¶ 25} We now turn to the relevant statutes in order to determine whether the trial court erred when it modified the parties' shared-parenting plan. We first note that such plans may be modified under R.C. 3109.04(E)(1)(a), 3109.04(E)(2)(a), or 3109.04(E)(2)(b). Under each of these statutes, modifications to a shared-parenting decree require that the modifications be in the best interests of the children involved. See R.C. 3109.04(E)(1)(a), (E)(2)(a), and (E)(2)(b).

{¶ 26} Under R.C. 3109.04(E)(2)(a), both parents under a shared-parenting decree jointly may modify the plan if the modifications are filed with the court. Additionally, the parents' proposed modifications shall be included in the plan,

unless they are not in the best interest of the children, whereupon the court may reject them. R.C. 3109.04(E)(2)(a). Further, when both parents jointly submit a modification, the modification shall be effective upon the court's inclusion of it in the plan. R.C. 3109.04(E)(2)(a); *Matter of Stiffler* (Sept. 29, 1994), 4th Dist. No. 94 CA 841, 1994 WL 534910. Since Fisher and Hasenjager did not jointly move to modify, R.C. 3109.04(E)(2)(a) is not applicable to the case sub judice.

{¶ 27} Thus, the trial court had to decide whether to apply R.C. 3109.04(E)(1)(a) or 3109.04(E)(2)(b). R.C. 3109.04(E)(2) provides additional methods for modifying a decree allocating parental rights and responsibilities, other than those authorized under R.C. 3109.04(E)(1). *Carr v. Carr* (Aug. 11, 1999), 9th Dist. No. 2880–M, 1999 WL 598837. The prefatory sentence to R.C. 3109.04(E)(2)(b) provides, "In addition to a modification authorized under division (E)(1) of this section," clearly showing the General Assembly's intention to provide an independent way to make modifications. *Myers v. Myers,* 153 Ohio App.3d 243, 2003-Ohio-3552, 792 N.E.2d 770, at ¶ 35.

{¶ 28} Under R.C. 3109.04(E)(2)(b), a trial court may modify the terms of a shared-parenting decree if it determines that the modifications are in the best interest of the child. See *Patton v. Patton,* 141 Ohio App.3d 691, 695, 753 N.E.2d 225. Also, R.C. 3109.04(E)(2)(b) provides that modifications to the terms of a plan can be made only to plans that have been approved by the court and incorporated into the shared-parenting decree. Additionally, a trial court may modify the terms of a plan, under R.C. 3109.04(E)(2)(b), at any time, upon the trial court's own motion or upon the request of one or both parties. See id. (in dicta); *Carr,* supra. Finally, under R.C. 3109.04(E)(2)(b), trial courts are not required to make a preliminary determination into whether there was a change in circumstances of the child, his or her residential parent, or either of the parents subject to a shared-parenting decree. *Patton,* 141 Ohio App.3d at 695, 753 N.E.2d 225; see *In re Beekman,* 4th Dist. No. 03CA710, 2004-Ohio-1066, 2004 WL 432235, at ¶ 14 ("[T]he plain language of [R.C. 3109.04(E)(2)(b) ] permits modification of a shared parenting plan upon a finding that the proposed modifications are in the best interest of the child, and does not require a finding that the child's circumstances have changed since the prior decree"); *Morrison v. Morrison* (Nov. 15, 2000), 9th Dist. No. 00CA0009, 2000 WL 1707168 ("[P]ursuant to R.C. 3109.04(E)(2)(b), a trial court may modify a shared parenting decree *solely* on a determination of the best interest of the child") (emphasis added); *Meyer v. Anderson* (Apr. 18, 1997), 2d App. Dist. No. 96CA32, 1997 WL 189383 (in dicta) ("[E]ven a flagrant failure by the court to comply with the requirements articulated in R.C. 3109.04(E)(1)(a) may not constitute error if the modification can be reconciled with the seemingly less stringent demands of (E)(2)(b)").

{¶ 29} Even though R.C. 3109.04(E)(2)(b) provides an independent basis for modifications to the terms of shared-parenting plans, some appellate courts have required trial courts to apply R.C. 3109.04(E)(1)(a), instead of R.C. 3109.04(E)(2)(b), when the modification of the agreement is "substantial" or "substantially" changes the allocation of parental rights and responsibilities. *Moore v. Moore* (Mar. 27, 1998), 11th Dist. No. 97–P–0008, 1998 WL 156983; see *Fisher v. Campbell* (June 23, 1997), 12th Dist. No. CA96–11–248, 1997 WL 349013 ("We find that R.C. 3109.04(E)(1)(a) is applicable to the present case because appellant's proposed modifications of the shared parenting agreement substantially changes the allocation of the parties' parental rights and responsibilities"); see, also, *Bauer v. Bauer*, 12th Dist. No. CA2002–10–083, 2003-Ohio-2552, 2003 WL 21135483, at ¶ 13, citing *Fisher*, supra.

{¶ 30} Additionally, other appellate courts have required trial courts to apply R.C. 3109.04(E)(1)(a), instead of 3109.04(E)(2)(b), when the modification to the plan affects "an allocation of parental rights and responsibilities." For example, in *Bauer*, the Twelfth District stated,

> While a modification of the parental rights and responsibilities in a prior court order allocating parental rights, such as a shared parenting agreement, requires a finding of a change of circumstances under R.C. 3109.04(E)(1)(a), a modification of the terms in a shared parenting agreement only requires a finding that it be in the best interest of the child under R.C. 3109.04(E)(2)(b).

*Bauer*, supra, at ¶ 13; see *Hunter v. Bachman*, 9th Dist. No. 04CA008421, 2004-Ohio-5172, 2004 WL 2244125, at ¶ 9, fn. 1 ("We recognize that other districts may require a court to modify a shared parenting plan under R.C. 3109.04(E)(1)(a) where the modification represents a substantial change from the original plan. However, we opt to follow other districts which do not distinguish between substantial and other changes" [Citation omitted.]); *Schoettle v. Bering* (Apr. 22, 1996), 12th Dist. No. CA95–07–011, 1996 WL 189027 ("R.C. 3109.04(E)(1)(a) allows a trial court to modify an allocation of parental rights and responsibilities, that is custody and visitation, as set forth in an agreed upon shared parenting plan when such modification is in the best interest of the child and a change of circumstances has occurred").

{¶ 31} Also, some appellate courts have allowed modifications to shared-parenting plans, under R.C. 3109.04(E)(2), on a trial court's motion. *Thomas v. Thomas* (Sept. 17, 1999), 2d Dist. No. 98–CA–55, 1999 WL 812385; *Carr*, supra.

{¶ 32} In *Thomas*, appellee-father moved to terminate a shared-parenting plan; however, the trial court declined. The trial court instead modified the plan and ordered that the parties' children reside with each parent in alternate years and alternate between each parent annually. Additionally, the trial court ordered that the nonresidential parent could have visitation as the parties agreed or if

they could not agree, in accordance with the court's standard order of visitation. In concluding that the trial court did not err in failing to apply R.C. 3109.04(E)(1)(a), the Second District stated:

Although [appellee-father] moved the court for an order terminating the shared parenting plan, that is not what the court did. The trial court modified the shared parenting plan, concluding that it was in the best interest of the children to do so. A trial court is given express authority, on its own motion, to modify a shared parenting plan at any time if it determines that the modification is in the best interests of the children. R.C. 3109.04(E)(2)(b). Because the trial court had the authority to modify the shared parenting plan on its own motion, it had the authority to do so following the hearing on [appellee-father's] motion to terminate the shared parenting plan, concluding, as it evidently did, that a termination of the shared parenting plan was not warranted.

Id.

{¶ 33} In *Carr*, the parents adopted a shared-parenting plan as a part of their divorce, in which the father would be primary residential parent and the mother would have their child on weekends, alternating holidays, and for a two-week vacation. Subsequently, the father and mother each submitted proposed shared-parenting plans. After a hearing before a magistrate, the magistrate recommended adoption of a shared-parenting plan that differed from both of the proposed plans. The trial court adopted the magistrate's decision, overruled the father's objections, and entered judgment for the mother.

{¶ 34} The Ninth District stated, affirming the judgment of the trial court, which ordered its own shared parenting plan:

When a shared parenting plan is first adopted under R.C. 3109.04(D)(1)(a)(ii), the trial court must approve a plan submitted by one of the parties, or the court may return the plans with suggestions for modifications. The court cannot create its own shared parenting plan. *McClain v. McClain* (1993), 87 Ohio App.3d 856, 857, 623 N.E.2d 242. However, in the case at bar, a shared parenting plan had previously been adopted. Thus, when the trial court adopted the magistrate's decision, the trial court did not adopt a shared parenting plan but instead modified an existing shared parenting plan.

[Father] argues that all modifications to a shared parenting plan must be pursuant to R.C. 3109.04(E)(1)(a). However, three additional methods of modifying a decree allocating parental rights and responsibilities are found in R.C. 3109.04(E)(2). R.C. 3109.04(E)(2)(b) states in relevant part:

The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the

best interest of the children or upon the request of one or both of the parents under the decree.

Thus, the trial court was empowered to modify the shared parenting decree in a form different from the proposed modifications submitted by Father and Mother.

(Footnote omitted.) Id.

 {¶ 35} We agree with the logic of *Thomas* and *Carr* and find that the trial court, upon the request of both Fisher and Hasenjager, was able to modify the terms of the shared-parenting agreement under R.C. 3109.04(E)(2)(a). While we recognize that some of our sister appellate districts require trial courts to apply R.C. 3109.04(E)(1)(a) when the proposed modifications to the plan change the allocation of parental rights and responsibilities, are substantial modifications, or substantially change the parental rights and responsibilities, we specifically find that a trial court is able to modify the terms of the plan under R.C. 3109.04(E)(2)(a), either on its own motion or on the request of one or both of the parents, as long as the modifications are in the best interest of the child. See *Tener v. Tener–Tucker*, 12th Dist. No. CA2004–05–061, 2005-Ohio-3892, 2005 WL 1798273, at ¶ 19.

 {¶ 36} While some districts have concluded that some modifications, such as a change in the amount of child support, *Tonti v. Tonti*, 10th Dist. Nos. 03AP–494, 03AP–728, 2004-Ohio-2529, 2004 WL 1109840, at ¶ 78, or who provides transportation, *Schoettle*, supra, are modifications to the "terms" of a shared parenting plan, we find that the General Assembly's use of the word "terms" in R.C. 3109.04(E)(2)(b) shows its intent to allow trial courts to modify all provisions incorporated in a shared-parenting plan.

 {¶ 37} As defined in Black's Law Dictionary, "terms" are "provisions that define an agreement's scope; conditions or stipulations; terms of sale." Black's Law Dictionary (8th Ed.1999) 1510. The provisions in a shared-parenting plan that allocate the parental rights and responsibilities for a child between his or her parents define the scope of the parent's legal rights as well as provide conditions or stipulations of the plan. Clearly, they are "terms" of the plan. Accordingly, a trial court may modify such a plan to designate a parent the residential parent and legal custodian, under R.C. 3109.04(E)(2)(b), either on its own motion or on the request of one or both of the parents, solely on its determination that the modifications are in the best interest of the child.

{¶ 38} Since Fisher and Hasenjager both moved to modify their shared-parenting agreement to be named residential parent and legal custodian of Demetra, we find that the trial court could have applied R.C. 3109.04(E)(2)(b).

■ {¶ 39} In doing so, the trial court was entitled to broad discretion in determining whether a change in the allocation of parental rights and responsibilities was warranted. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. In this regard, we are guided by the presumption that the trial court's findings were indeed correct. *Miller*, 37 Ohio St.3d at 74, 523 N.E.2d 846.

■ {¶ 40} Therefore, we must determine whether the trial court abused its discretion when it determined that the modification of the shared-parenting plan was in the best interest of Demetra. Upon our review of the record, we find that the trial court did not abuse its discretion when it modified the plan and designated Hasenjager as the sole residential parent and legal custodian of Demetra.

■ {¶ 41} Further, Fisher argues that the trial court erred when it did not designate him with the right to claim Demetra as an exemption for all income tax purposes. However, this issue is not properly before this court because it was not raised as an assignment of error, and we refrain from addressing it.

{¶ 42} Fisher's assignment of error is overruled.

{¶ 43} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

CUPP, J., concurs.

BRYANT, P.J., concurs in judgment only.