OPINION *Page 2 
{¶ 1} Defendant-Appellant, Lori L. Heiser, n.k.a. Duenas, appeals the judgment of the Mercer County Court of Common Pleas, Domestic Relations Division, designating Plaintiff-Appellee, Craig A. Heiser, as residential parent and legal custodian of the parties' three children. On appeal, Lori asserts that the trial court erred in designating Craig as residential parent. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} Lori and Craig were married on February 21, 1992, and have three minor children, Kyle, born December 21, 1991, Abbigail, born September 30, 1993, and Kameron, born February 23, 1999 (hereinafter Kyle, Abbigail, and Kameron Heiser collectively referred to as "the children").
 {¶ 3} In June 2002, Lori and Craig divorced. Regarding custody of children, the divorce decree provided that:
 The parties shall jointly share parenting with regarding (sic.) to the three minor children. The parties shall have equal rights and responsibilities as to their minor children, and the right of neither party shall be superior to the other. Unless the parties agree to a different schedule, the following schedule shall be followed:
 * * *
 E. In the event either parent is required to work during the time they have the children, they shall first offer to the other parent the right to babysit. If the parties need a babysitter for work purposes, Mother shall choose the same and the parent who has the care of the child during that time shall pay for said babysitter. *Page 3 
 F. Father shall choose the school district of thechildren.
(Divorce Decree, p. 2) (emphasis in original). Additionally, the divorce decree ordered that Lori pay Craig child support in the amount of $49.92 per month, per child; that Lori choose the children's babysitter for work purposes; and, that Craig provide primary health insurance coverage for the children.
 {¶ 4} In November 2002, Lori moved to reallocate parental rights and responsibilities, requesting that she be designated residential parent and legal custodian of the children. Subsequently, Lori filed a motion requesting that the court find Craig in contempt for allegedly not allowing her to choose the children's babysitter for work purposes; that the court order Craig to provide an alcohol-free environment for the children; and, that the court order Craig to obtain health insurance for the children.
 {¶ 5} In March 2003, Lori withdrew her motion for contempt and, accordingly, the trial court dismissed the motion.
 {¶ 6} In April 2003, Lori moved for child support redetermination. Subsequently, pursuant to the parties' agreement, the trial court denied Lori's November 2002 motion to reallocate parental rights and responsibilities, but modified the shared parenting plan to require that Craig give Lori sixty days notice before moving the children to another school district. All other orders remained in effect.
 {¶ 7} In June 2003, the trial court granted Lori's April 2003 motion for child support redetermination and ordered Craig to pay Lori $11.43 per month, per child. *Page 4 
 {¶ 8} In February 2005, Craig moved to modify the shared parenting plan, requesting that he have the right to choose the children's babysitter for work purposes.
 {¶ 9} In March 2005, the trial court, sua sponte ordered therapeutic mediation for both parties. Additionally, the trial court granted Craig's February 2005 motion to modify the shared parenting plan.
 {¶ 10} In January 2006, Lori again moved to modify the shared parenting plan, requesting that the shared parenting plan be terminated; that she be designated residential parent for school, counseling, and medical purposes; that child support and health insurance be determined; and, that she be permitted to claim the children as dependents on her tax return.
 {¶ 11} In June 2006, the trial court held a hearing on the motion to modify the shared parenting plan, during which Lori testified that she had been arrested and taken to jail six times for driving under suspension and that, at least one of those times, the children were in her car; that she had been convicted twice for passing bad checks; that she and all three children were undergoing home-based psychological therapy; that Kyle and Abbigail were undergoing individual psychological therapy; that she had "seen [Craig] drink and drive with the kids" (hearing transcript, p. 74); that she had been aware that her current husband was in the country illegally; that he had been deported and had been in Mexico since 2005; that she would probably have to decide whether to stay married and live separate from her husband or to move to Mexico if he could not return *Page 5 
to the United States; that Craig had not been participating in an individualized education program (hereinafter referred to as "IEP") for Abbigail; that Craig had not attended meetings with Abbigail's teachers; and, that she had scheduled school meetings during the afternoon and did not know when Craig's work day ended.
 {¶ 12} Craig testified that, on one occasion, Lori had gone to Mexico for ten days, giving him short notice, and that he had watched the children while she was gone; that he had watched the children while Lori was in jail for driving under suspension; that he had consumed alcohol when the children were at his home, but that he had not become drunk around the children or driven with them after consuming alcohol; that he had not attended meetings with the children's teachers that were scheduled in the afternoon because he had been required to work during the afternoon; that he had tried to stay involved with the school regarding his children's progress; and, that he had difficulty contacting the school while at work because "[his] employer [had] told [him] that if [he] made another phone call on company time, [he] was going to be fired." (Hearing Transcript, p. 143).
 {¶ 13} In August 2006, the magistrate recommended terminating the shared parenting plan and designating Craig as residential parent. In doing so, the magistrate considered the factors under R.C.3109.04(F)(1). The magistrate recognized that Lori wished to terminate the shared parenting plan and be sole residential parent of the children and that Craig expressed no preference between sole custody or shared parenting, but desired that the children remain together. R.C.3109.04(F)(1)(a). The *Page 6 
magistrate also conducted an in-camera interview with each child and determined that Kyle possessed adequate reasoning ability to make an election and did make an election, and that both Abbigail and Kameron lacked the reasoning ability to make an election. R.C 3109.04(F)(1)(b). The magistrate also concluded that Kyle and Kameron had a very close relationship with each other; that Kyle and Kameron had a much closer and better relationship with Craig than with Lori; and, that Abbigail appeared to have a closer relationship with Lori, but called Craig for assistance. Further, the magistrate found that the children did not have a good relationship with Lori's current husband. R.C. 3109.04(F)(1)(c).
 {¶ 14} In consideration of R.C. 3109.04(F)(1)(d), the magistrate found that all of the children appeared to be well-adjusted in Craig's home, and that there was not sufficient testimony to determine if they were well-adjusted in Lori's home. The magistrate also noted that the children did not sleep at Lori's home while in her care, but slept at their aunt or babysitter's home. Further, the magistrate found that Kameron was well-adjusted in school and in the community; that Abbigail was not completely well-adjusted in school because, although her grades were satisfactory, she had made false accusations against her teacher; and, that Kyle was not well-adjusted in school and had a juvenile record for criminal mischief.
 {¶ 15} In considering the mental and physical health of all persons involved pursuant to 3109.04(F)(1)(e), the magistrate found that all parties were in good physical *Page 7 
health; that Abbigail was in counseling, but appeared to need more intensive therapy than she had been receiving; that Kyle had ADD, behavioral problems, and apathy issues; that Craig was in fairly good mental health; and, that Lori had "some mental health issues. She [had] credibility issues. Further, she [had] a very long arrest record. She appeared] to want to defy authority both for herself and her spouse." (August 2006 Magistrate's Decision, p. 12).
 {¶ 16} Additionally, the magistrate considered R.C. 3109.04(F)(1)(f) and found that both parties were likely to honor the parenting plan, but that Craig was more likely to follow court orders, while "Lori appeared] to have difficulty following court orders." The magistrate further found that there was no evidence presented to demonstrate that Lori was in arrears in her child support payments, R.C. 3109.04(F)(1)(g), and that neither parent had continuously and willfully denied the other parent's right to parenting time. R.C. 3109.04(F)(1)(i).
 {¶ 17} In consideration of R.C. 3109.04(F)(1)(h), the magistrate concluded that, although neither parent had been convicted or pled guilty to a criminal offense resulting in a child being abused, "there [was] reason to believe that Lori [had] acted in a manner resulting in the children being abused or neglected by driving under suspension with the children in the car." (Magistrate's Decision, p. 13). Finally, the magistrate found that, although neither parent was planning to establish a residence outside of the state, there was some concern that with Lori's husband being in Mexico indefinitely "[t]hat she may *Page 8 
be leaving the country for undetermined periods of time. Her past behavior has demonstrated this." (Magistrate's Decision, p. 13); R.C.3109.04(F)(1)(j).
 {¶ 18} Pursuant to R.C. 3109.04(F)(2), the magistrate further found that Craig and Lori did not have the ability to cooperate and make joint decisions regarding the children and that they did not have the ability to encourage love, affection, and contact between the children and between each other.
 {¶ 19} Based on the above findings, the magistrate concluded that there had been a change in circumstances[1] since the prior shared parenting decree and that it was in the best interest of the children to terminate the shared parenting plan and name Craig as residential and custodial parent. The magistrate also ordered Lori to pay Craig child support in the amount of $116.77 per month, per child.
 {¶ 20} In November 2006, Lori filed objections to the magistrate's decision, disputing the findings that she had mental health issues, credibility issues, a very long arrest record, appeared to want to defy authority both for herself and her spouse, had difficulty following court orders, acted in a manner resulting in the children being abused or neglected by driving under suspension, and that there was concern she would be leaving the country for undetermined periods of time. She further objected to the designation of Craig as the children's residential and custodial parent. *Page 9 
 {¶ 21} In January 2007, the trial court overruled Lori's objections and, except for the commencement date of child support, adopted the magistrate's decision in its entirety.
 {¶ 22} It is from this judgment that Lori appeals, presenting the following assignment of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN DESIGNATING APPELLEE FATHER THE RESIDENTIAL PARENT OF THE PARTIES (SIC.) THREE CHILDREN.
 {¶ 23} In her sole assignment of error, Lori asserts that the trial court erred when it designated Craig as residential parent and legal custodian of the children. Specifically, Lori claims that the trial court's findings that she had mental health and credibility issues, a long arrest record, appeared to defy authority, had difficulty following court orders, acted in a manner resulting in the children being abused or neglected by driving under suspension, and could be leaving the country for undetermined periods of time were unreasonable, arbitrary, and unconscionable in light of the testimony and facts set forth in the record, and that the trial court did not properly consider Craig's absence at meetings with Abbigail's teachers. We disagree.
 {¶ 24} Decisions concerning child custody matters rest within the sound discretion of the trial court. Miller v. Miller (1988),37 Ohio St.3d 71, 74. Custody determinations are some of the most difficult and agonizing decisions a trial judge must make, and therefore appellate courts must grant wide latitude to their consideration of the evidence. *Page 10 
 Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. Therefore, a reviewing court will not reverse a trial court's decision regarding child custody absent an abuse of discretion. Masters v. Masters (1994),69 Ohio St.3d 83, 85. A finding of abuse of discretion requires evidence that the decision of the trial judge was unreasonable, arbitrary, or unconscionable. Leigh v. State Emp. Relations Bd. (1996),76 Ohio St.3d 143, 144.
 {¶ 25} When a reviewing court applies the abuse of discretion standard, it may not substitute its own judgment for that of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Additionally, in child custody cases, deference to the trial court on credibility matters is "even more crucial * * * [because] there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis, 77 Ohio St.3d at 419.
 {¶ 26} R.C. 3109.04(E)(2)(C) governs termination of a prior final shared parenting plan and provides, in pertinent part, that:
 The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division *Page 11 (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.
 {¶ 27} In terminating a shared parenting plan, the trial court must consider the best interests of the children. R.C. 3109.04(B)(1). In making this determination, the trial court is required to consider the factors outlined in R.C. 3109.04(F), but may consider additional factors as well. R.C. 3109.04(F)(1). Therefore, we must examine the record to determine (1) that the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1), and (2) that there is competent, credible evidence supporting the trial court's conclusion that it was in the children's best interest to designate Craig as residential parent.Day v. Day, 3d Dist. No. 13-05-17, 2005-Ohio-6032, at ¶ 10. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, syllabus.
 {¶ 28} R.C. 3109.04(F)(1) specifies that a trial court should consider the following factors, among others, in determining the best interest of the children:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and *Page 12 responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 29} Here, Lori argues that there was insufficient evidence to substantiate the trial court's findings concerning her mental health, credibility, arrests, defiance of the law, and likelihood of leaving the country. However, after reviewing the record, we find that the trial court considered the requisite factors and that there was sufficient credible and competent evidence to support its findings of fact. Testimony was presented that Lori had been receiving home-based psychological therapy; that she had been arrested *Page 13 
and taken to jail for driving under suspension six times, and that, on at least one of those occasions, the children were with her in the car; that she had been convicted twice for passing bad checks; that she had been aware that her current husband was an illegal alien, but continued to live with him; and, that she had once gone to Mexico for ten days on very short notice. This testimony provides sufficient evidence to support the trial court's findings.
 {¶ 30} Lori also argues that the trial court failed to consider that Craig had not participated in Abbigail's IEP and had not attended some school meetings. Although testimony was presented that Craig had not participated in the IEP or attended many of the school meetings, testimony was also presented that Lori had scheduled the meetings with the school during the afternoon; that Craig had been required to work in the afternoon; and, that Craig had tried to stay involved with the school regarding the children's progress. Although Lori's testimony conflicts with Craig's testimony, "`[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" State v. Shafer, 3d Dist. No. 6-05-15,2006 WL 2337609, 2006-Ohio-4189, quoting State v. Awan (1986),22 Ohio St.3d 120, 123. Therefore, the credibility of each party was an issue for the trier of fact. Clearly, the magistrate chose to believe Craig's testimony. Thus, we will not second guess the conclusion of the trier of fact. *Page 14 
 {¶ 31} Moreover, Lori's argument ignores the magistrate's other numerous findings, including that Kyle and Kameron had a closer relationship with Craig and that Abbigail called Craig for assistance; that the children did not have a good relationship with their step-father; that the children were well-adjusted in Craig's home; that the children did not sleep at Lori's home when they were with her; that Abbigail appeared to need more intensive psychological therapy than she had been receiving while in Lori's care; that Craig and Lori did not have the ability to cooperate and make joint decisions regarding the children; and, that Craig and Lori did not have the ability to encourage love, affection, and contact between the children and between each other. These factors, even when considered alone, constitute substantial competent and credible evidence to support a finding that termination of the shared parenting plan and designation of Craig as residential parent was in the best interest of the children. Therefore, we cannot find that the trial court abused its discretion in terminating the shared parenting plan and designating Craig as sole residential parent and legal custodian.
 {¶ 32} Accordingly, Lori's assignment of error is overruled.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW and PRESTON, JJ., concur.
[1] This court has previously held that a finding of a change in circumstances is not necessary prior to termination or modification of a shared parenting plan made pursuant to R.C. 3109.04(E)(2). Fisher v.Hasenjager, 168 Ohio App.3d 321, 2006-Ohio-4190, appeal allowed by112 Ohio St.3d 1406, 2006-Ohio-6447. However, such a finding would further support our result in this case. *Page 1