OPINION *Page 2 
{¶ 1} Defendant-Appellant Brook Collier ("Brook")[1] appeals from the October 6, 2006 Judgment Entry of the Court of Common Pleas of Henry County, Juvenile Division terminating the January 15, 1997 shared parenting plan between Brook and Plaintiff-Appellee Troy Pedraza ("Troy") and designating Troy as the residential parent and legal custodian of the parties' minor child subject to Brook exercising eight weeks of parenting time per year, in no more than two-week blocks, at no greater distance than 50 miles from Henry County, Ohio.
 {¶ 2} This matter concerns the custody arrangement between the parties as to their daughter, Paige Pedraza, born April 15, 1992. Troy and Brook lived together but never married. After the parties separated, Troy filed a complaint for parental rights and responsibilities and a motion for legal custody of Paige. On September 21, 1994 the Henry County Juvenile Court granted Troy primary parental rights and responsibilities and designated him as the residential parent and legal custodian of Paige. However, on November 15, 1994 the court approved the parties' shared parenting plan which provided for joint custody of Paige.
 {¶ 3} On April 15, 1996 Troy flied a motion for an ex parte order restraining both parties from removing Paige from Ohio pending further court order. In support of this motion Troy alleged that Brook had moved to North *Page 3 
Carolina in May of 1995, was employed as a stripper, and had intentions of taking Paige to North Carolina which Troy did not believe was in his daughter's best interest. Additionally, Troy sought an order designating him as the residential parent and legal custodian of Paige or alternatively, modifying the shared parenting plan so that Paige resided primarily with him. The juvenile court ordered that both parties were restrained from removing Paige from Ohio pending further court order but subsequently entered a Judgment Entry permitting Brook to exercise visitation with Paige in North Carolina for three weeks in August 1996.
 {¶ 4} On January 15, 1997 the juvenile court issued a Judgment Entry regarding an agreed modification of the November 15, 1994 shared parenting plan. Specifically, the court ordered that Paige would reside with Troy during the school year and with Brook during the summer months.
 {¶ 5} The terms of the January 15, 1997 shared parenting plan were followed without incident until May 2004. However, on May 21, 2004 Troy filed a motion for restricted visitation as he had recently become aware of activities in which Brook was participating that he believed were inappropriate for their minor child to be exposed to. Specifically, Troy received information from an article in the "USA Today" about Brook running a pornography website business out of her home and the existence of web cameras and computers in her home used in developing her website. Based upon this information and review of Brook's website, Troy requested that the court restrict Brook's summer visitation with *Page 4 
Paige to a two-week period at a location away from Brook's home and schedule a hearing on the issue of permanently restricted visitation.
 {¶ 6} On May 21, 2004 the juvenile court issued a Judgment Entry regarding Troy's motion for restricted visitation and ordered that Brook's summer visitation for 2004 was "restricted to a period of two weeks, at a location other than in and around the Defendant's home and the activities Defendant has portrayed in her home." However, the court stated that "[t]his matter will be scheduled at a future date for hearing on Plaintiff's motion for an evidentiary hearing on restricted visitation." On April 27, 2005 the court issued an order outlining the terms of discovery and scheduling an evidentiary hearing for June 7, 2005 on the issue of summertime visitation between Brook and Paige for the summer of 2005. This hearing was continued at Brook's request to July 25, 2005.
 {¶ 7} Brook subsequently retained new counsel who filed a motion to continue the evidentiary hearing and a motion to appoint a Guardian Ad Litem ("GAL") to represent Paige's interests. The court granted the continuance and reset the evidentiary hearing to September 30, 2005. Additionally, the court appointed a GAL for Paige. The evidentiary hearing was continued again to November 15, 2005. On November 3, 2005 Troy filed a motion to terminate the shared parenting plan based upon the same grounds as his motion for restricted visitation and requested that this motion also be addressed at the evidentiary hearing. *Page 5 
 {¶ 8} On November 15, 2005 the juvenile court finally conducted the evidentiary hearing regarding Troy's motions for restricted visitation and termination of the parties' January 15, 1997 shared parenting plan. In an April 13, 2006 Magistrate's Decision, the magistrate found as follows:
 Looking at the facts and in light of the necessity on the part of the Plaintiff to show that the behavior of Defendant is having a harmful effect upon the child, it is the decision of the undersigned that there has been no preponderance of proof of that harmful effect and that there is no reason why the Defendant should not have visitation and companionship with the parties' daughter at her home in Florida. As such, that part of Plaintiff's motion is found not well taken and denied. However . . . Defendant will remove from her home the cameras that are used in this line of business at all times when the child is at her home, and further, that she shall insure that her computers used in this business will be locked in such a fashion as the child will not have access to the materials contained in those computers.
Additionally, in denying Troy's motion to terminate the parties' shared parenting plan, the magistrate stated as follows:
 . . . the best interests of the child would not be served by the termination of the shared parenting plan in this matter . . . the parenting time schedule is not such that it requires a great deal of contact between the parents and . . . there hasn't been any showing that there has been a negative effect on the child as a result of Defendant's new business.
(See April 13, 2006 Magistrate's Decision, pp. 4-5). At the time of the evidentiary hearing and at the time the Magistrate's Decision was issued, it was apparently believed by the parties that Paige was unaware of her mother's sexual conduct and pornographic website business. *Page 6 
 {¶ 9} On April 21, 2006 Brook filed a motion for leave to obtain a passport for Paige as Brook had recently relocated to Thailand. On this same date, Troy filed a motion asking the court to deny Brook's request for a passport for Paige. However, on May 8, 2006 the juvenile court ordered that Troy apply for a passport for Paige but ordered that the passport would be held by the court.
 {¶ 10} On April 27, 2006 Troy filed objections to the April 13, 2006 Magistrate's Decision and filed a brief in support of same on June 30, 2006. Brook filed a timely response to Troy's objections. The GAL also filed a brief regarding Troy's objections to the Magistrate's Decision and expressed his concern with Paige traveling to Thailand in light of Thailand's reputation as a leading producer of pornography and its absence as a signatory to the Hague Convention on the Civil Aspects of International Child Abduction.
 {¶ 11} Without conducting a hearing, on October 6, 2006 the juvenile court issued a Judgment Entry regarding Troy's objections to the April 13, 2006 Magistrate's Decision wherein the court determined as follows:
 "[T]he Court finds that a change of circumstances has occurred since the previous Order filed herein and it would be in the best interests of the minor child of the parties . . . that the shared parenting agreement be terminated and that the father should be the residential parent."
Accordingly, the court terminated January 15, 1997 shared parenting plan and designated Troy as the residential parent and legal custodian of Paige subject to Brook exercising eight weeks of visitation per year, in no more than two week *Page 7 
blocks, at no greater distance than 50 miles from Henry County, Ohio and in no event, outside of the continental United States, except as agreed to by Troy. (See October 6, 2006 Judgment Entry, p. 2).[2]
 {¶ 12} Brook now appeals, asserting six assignments of error. ASSIGNMENT OF ERROR NO. 1 THE COURT DENIED MS. LAMAR EQUAL PROTECTION AND DUE PROCESS OF LAW.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT FAILED TO CONDUCT AN "IN CAMERA" AFTER A CHANGE IN CIRCUMSTANCES THAT MIGHT HAVE AFFECTED THE CHILD'S PERCEPTION OF HER PARENTS WHEN THERE WERE PENDING MOTIONS. THE CHILD'S ATTITUDE TOWARD TRAVELING OVERSEAS WOULD HAVE BEEN AN IMPORTANT CONSIDERATION.
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO CONDUCT AN IN CAMERA INTERVIEW.
 ASSIGNMENT OF ERROR NO. 4 THE TRIAL COURT'S ORDER IS IMPRACTICAL.
 ASSIGNMENT OF ERROR NO. 5 THE TRIAL COURT ERRED WHEN IT FAILED TO PERMIT OVERSEAS VISITATION
 ASSIGNMENT OF ERROR NO. 6 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ISSUED AN ORDER THAT GAVE THE PLAINTIFF CONTROL OVER VISITATION. *Page 8 
 {¶ 13} For ease of discussion, we shall address Brook's assignments of error out of order. Additionally, we elect to address a number of her assignments of error together.
 Assignments of Error Nos. 2 and 3 {¶ 14} In her second and third assignments of error, Brook alleges that the trial court erred and abused its discretion in failing to conduct an "in camera" interview of the parties' minor daughter upon her request.
 {¶ 15} In determining the allocation of parental rights and responsibilities, the trial court is granted broad discretion.Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Accordingly, a trial court's decision regarding the allocation of parental rights and responsibilities that is supported by substantial competent and credible evidence will not be reversed on appeal absent an abuse of discretion. Oplinger v. Oplinger 3rd Dist. No. 10-06-05, 2006-Ohio-2784 citing Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 16} Furthermore, the trial court's discretion in determining parental rights must remain within the confines of the relevant statutory provisions. Miller *Page 9 v. Miller (1988), 37 Ohio St.3d 71 at 74. R.C. 3109.04 deals with parental rights and responsibilities, shared parenting, modifications of orders, the best interests of the child and the child's wishes. This section sets out in great detail the court's duties and responsibilities in dealing with these issues. Badgett v. Badgett (1997),120 Ohio App.3d 448, 450, 698 N.E.2d 84. Additionally, modifying the allocation of parental rights and responsibilities is governed by R.C.3109.04(E)(1)(a), which states in pertinent part:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree . . . that a change has occurred in the circumstances of the child, [or] his residential parent or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. (Emphasis added).
See also Riggle v. Riggle 9th Dist. No. 01CA0012, 2001-Ohio-1376.
 {¶ 17} Applying this statutory language requires the trial court to first determine whether a change of circumstances of the child, residential parent or either parent has occurred since the prior court order. See Wyss v. Wyss (1982), 3 Ohio App.3d 412, 414, 445 N.E.2d 1153. A change in circumstances should be found before the trial court determines the best interest of the child. Zinnecker v. Zinnecker
(1999), 133 Ohio App.3d 378, 383, 728 N.E.2d 38. The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. Id. citing Clyborn v. Clyborn (1994),93 Ohio App.3d 192, 196, 638 N.E.2d 112. *Page 10 
 {¶ 18} Accordingly, we must begin our analysis of Brook's second and third assignments of error with a determination as to whether a change of circumstances existed. Although "change of circumstances" is not defined by R.C. 3109.04, courts have defined this phrase to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599,604-605, 737 N.E.2d 551.
 {¶ 19} In the present case it is undisputed that at the time of the November 15, 2005 hearing and at the time the Magistrate's Decision was issued on April 13, 2006, Paige had been shielded from the nature of Brook's employment and the running of her website from her home in Florida. However, a change in circumstances arose both when Brook relocated to Thailand and again when Troy told Paige about Brook's employment after being asked by Paige why she could not visit her mother in Thailand. (See August 24, 2006 Supplemental Brief of Guardian Ad Litem, pp. 1-2).
 {¶ 20} In its August 31, 2006 Decision, the juvenile court found as follows:
 The Court has been advised by the guardian ad litem that it has been reported to him that the father has recently disclosed to the minor child the nature of the mother's on-line pornography business. While the Court cannot assess the effect on the minor child of this disclosure, a basic premise underlying the Magistrate's Decision herein no longer exists: that the child was unaware of her mother's activities. The Court cannot ignore this event as it relates to the parent-child dynamic between the mother and the minor child, as well as the impact that it has on the original matter. It is clearly a change in circumstances. *Page 11 
(See August 31, 2006 Decision, p. 2).[3]
 {¶ 21} Based on the foregoing, it is clear that the trial court applied the statutory language of R.C. 3109.04(E)(1)(a) and properly determined that a change had occurred both in the circumstances of Paige, regarding her awareness of Brook's employment and in the circumstances of Brook, due to her relocation to Thailand and request that Paige be allowed to visit her there. Accordingly, it was proper for the trial court to proceed to a determination as to the best interests of Paige.
 {¶ 22} We note in passing that this court has previously held that it is not always mandatory for the trial court to follow R.C.3109.04(E)(1)(a). In addition to modifications authorized under R.C.3109.04(E)(1), parental rights and responsibilities as specified in a shared parenting decree may be modified under R.C. 3109.04(E)(2)(a) and (b).[4] R.C. 3109.04(E)(2)(b) provides as follows:
 In addition to a modification authorized under division (E)(1) of this section:
 (b) The Court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to *Page 12 the plan under this division unless the modification is in the best interest of the children. (Emphasis added).
 {¶ 23} In Fisher v. Hasenjager, 3rd Dist. No. 10-05-14,2006-Ohio-4190, this court held that under R.C. 3109.04(E)(2)(b), trial courts are not required to make a preliminary determination into whether there was a change in circumstances of the child, his or her residential parent, or either of the parents subject to a shared parenting decree.Fisher v. Hasenjager, 3rd Dist. No. 10-05-14,2006-Ohio-4190 at ¶ 28 citing Patton v. Patton (2001),141 Ohio App.3d 691, 695, 753 N.E.2d 225.[5] Additionally, this court held as follows:
 While we recognize that some of our sister appellate districts require trial courts to apply R.C. 3109.04(E)(1)(a) when the proposed modifications to the plan change the allocation of parental rights and responsibilities, are substantial modifications, or substantially change the parental rights and responsibilities, we specifically find that trial court is able to modify the terms of the plan under R.C. 3109.04(E)(2)(a), either on its own motion or on the request of one or both of the parents, as long as the modifications are in the best interest of the child. * * * We find that the General Assembly's use of the word "terms" in R.C. 3109.04(E)(2)(b) shows its intent to allow trial courts to modify all provisions incorporated in a shared parenting plan. *Page 13 
Id. at ¶ 35, 36.[6]
 {¶ 24} However, whether a trial court elects to modify a shared parenting plan under R.C. 3109.04(E)(1)(a), 3109.(E)(2)(a) or 3109.04(E)(2)(b), any modifications to a shared parenting decree require that the modifications be in the best interests of the children involved. See R.C. 3109.04(E)(1)(a), (E)(2)(a), and (E)(2)(b). When determining the best interest of a child in a situation such as the present one, the trial court is guided by R.C. 3109.04(B) which provides, in relevant part, as follows:
 (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation. (Emphasis added).
 * * *
 (B)(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply: * * * (c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any *Page 14 necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.
 {¶ 25} This section is applicable to custody matters arising in juvenile court. R.C. 2151.23(F)(1). Additionally, R.C. 3109.04(B)(1) ismandatory in nature and the trial court must strictly follow its procedures. (Emphasis added). Riggle v. Riggle, 9th Dist. No. 01CA0012, 2001-Ohio-1376. In fact, the plain language of this statute absolutely mandates the trial court judge to interview a child if either party requests the interview. Badgett v. Badgett (1997),120 Ohio App.3d at 450. An interview is discretionary only if no party requests it; if a party to the allocation hearing makes the request, the court "shall" interview the child. Id.
 {¶ 26} Our review of the record indicates that at the November 15, 2005 hearing before the magistrate, Brook's attorney requested an in camera interview of Paige. (Transcript of November 15, 2005 hearing, ("Tr.") p. 129). Troy's attorney objected to this request and expressed concern that questions posed to Paige may cause her to become suspicious. In response to this exchange, the magistrate stated as follows:
 "I understand that I can ask her questions, but I don't necessarily want to ask her questions that are liable to tip her off as to what is even going on here." (Tr. p. 131). "To be honest, I don't think I have any choice. If you're asking for an in-camera of the child, yes, we have to do that . . . So if you're still renewing that request, I will interview the child." (Tr. p. 131). "I will schedule that interview. We'll need to sit down with our *Page 15 calendars . . . Mr. Pedraza, if you'll just bring her up here . . . I cannot do it today, unfortunately, I have hearings scheduled the entire afternoon." (Tr. p. 132).
 {¶ 27} Although Brook states in her brief that the magistrate conducted an in camera interview of Paige, we find nothing in our review of the record that demonstrates whether such an interview actually took place. We agree with the Twelfth and Fifth Appellate Districts that trial courts are required to make a record of any in camera interview with children involved in custody proceedings, to be kept under seal for review on appeal. See Donovan v. Donovan (1996), 110 Ohio App.3d 615,620, 674 N.E.2d 1252; Patton v. Patton (1993), 87 Ohio App.3d 844,623 N.E.2d 235.
 {¶ 28} Additionally, we note that the April 13, 2006 Magistrate's Decision is silent on its face as to whether an in camera interview was conducted, and furthermore, does not evince Paige's opinion or wishes as to the visitation schedule between her parents.
 {¶ 29} Pursuant to R.C. 3109.04(F)(1):
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; * * *. (Emphasis added). *Page 16 
 {¶ 30} Based on the foregoing, it is impossible for us to say that the juvenile court considered the factors listed in R.C. 3109.04(F). We find no indication in the April 13, 2006 Magistrate's Decision that the magistrate conducted an in camera interview with Paige, nor did he indicate that he considered the wishes and concerns Paige may or may not have expressed during such an interview. R.C. 3109.04(F)(1)(b).
 {¶ 31} Our review of the record also reveals that on August 3, 2006 Brook filed a motion requesting that the juvenile court conduct an in camera interview of Paige regarding her preference as to her residential parent, and to aid the court in its determination of what is in Paige's best interest.[7] In support of her motion, Brook stated that during a recent visit, Paige told Brook that Troy had disclosed Brook's occupation and website to her and told her (Paige) that she should be disgusted and not wish any contact with her mother due to her mother's employment. Brook alleged that Troy's actions indicate his underlying motive to interfere with Paige and Brook's relationship. Furthermore, Brook indicated that Paige told her that she doesn't care about the website business and would like to travel to Thailand.
 {¶ 32} In response to Brook's motion, the juvenile court entered an order which stated as follows: "At the request of Defendant and for good cause shown, *Page 17 
it is Ordered that Troy Pedraza shall bring the minor child, Paige to the hearing on 9-1-06 at 2:00 p.m. for the possibility that the child will be interviewed by the Court and the G.A.L." (See August 11, 2006 Order of Magistrate).
 {¶ 33} However, despite Brook's motion and the August 11, 2006 Order of Magistrate, the judge did not conduct an in camera interview of Paige.[8] When either party moves the court to interview the child in chambers, it is mandatory that he conduct such an interview.Badgett, supra, citing Troll v. Troll (Jan. 17, 1996), 7th Dist. No. 94-B-17, unreported, 1996 WL 19079. Failure to follow the mandates of R.C. 3109.04(B) is reversible error, even where the trial court has made a thoughtful and conscientious decision.Dolub v. Chmielewski 9th Dist. No. 22405, 2005-Ohio-4662. Accordingly, we find that the juvenile court erred in failing to conduct an in camera interview of Paige after Brook had requested the court to do so.
 {¶ 34} Furthermore, while not directly related to the merits of Brook's second and third assignments of error, we must express our concern with the performance of the guardian ad litem in the present case.
 {¶ 35} A GAL was appointed by the juvenile court to represent and protect Paige's interests. (See July 25, 2005 Magistrate's Order). However, our review of *Page 18 
the record does not demonstrate that the GAL filed a report with the juvenile court prior to the November 15, 2005 evidentiary hearing.
 {¶ 36} When asked at the November 15, 2005 hearing what he had done as a GAL in this case, the GAL testified that he spoke with Brook and her attorney as well as Troy and his attorney, and that he participated in the telephone depositions of Brook's sisters. (Tr. pp. 89-90). However, the GAL testified that he had no occasion to check the records of human services or the sheriff or any other similar agency regarding this matter. (Tr. p. 90). Furthermore, the GAL testified that he did not actually ask for or look at Paige's school records. (Tr. p. 97). Most concerning to this court is that when asked by Brook's attorney, "[d]id you talk to Paige?" the GAL replied, "I did not personally speak with Paige." (Tr. p. 90). "Never?" asked Brook's attorney. "Never." replied the GAL. (Tr. p. 90).
 {¶ 37} Additionally, although the GAL filed a brief regarding Troy's objections to the April 13, 2006 Magistrate's Decision wherein he expressed his opinion as to this case and expressed concern with Paige traveling to Thailand, his brief is also silent as to whether he conducted an interview with Paige so as assist in determining her best interests in this matter. We find that the GAL's lack of an interview with Paige, especially after Paige was told of her mother's employment and the contents of Brook's website, especially disconcerting and therefore, cannot say that the GAL diligently represented Paige's interests in this matter. *Page 19 
 {¶ 38} Based on the foregoing, we find that the juvenile court abused its discretion in failing to conduct an "in camera" interview of the parties' minor daughter upon Brook's written request, especially in light of the change of circumstances which occurred in this case subsequent to the April 13, 2006 Magistrate's Decision. Accordingly, Brook's second and third assignments of error are sustained.
 {¶ 39} Based on our disposition of Brook's second and third assignments of error, we find that Brook's first, fourth, fifth and sixth assignments of error are rendered moot and need not be addressed. See App.R. 12(A)(1)(c).
 {¶ 40} Specifically, we note that we are unable to address Brook's assignments of error dealing with the terms of the visitation order issued October 6, 2006 because the record cannot demonstrate what terms of visitation are appropriate without properly taking into account the trial court's consideration of the child's wishes and other appropriate factors based upon the in camera interview, and based upon an adequate GAL report — one which includes an interview of the child by the GAL.
 {¶ 41} Therefore, Brook's second and third assignments of error are sustained and the October 6, 2006 Judgment Entry of the Henry County Juvenile Court terminating the parties' January 1997 shared parenting plan and ordering that it is in the best interest of the parties' minor child that Troy be designated as the residential parent subject to, in relevant part, reasonable parenting time by *Page 20 
Brook, is reversed. This matter is remanded to the juvenile court with instructions for the judge to conduct an in camera interview with the parties' minor child pursuant to R.C. 3109.04 so as to determine the child's wishes and subsequently engage in a proper analysis of the best interests of the child. In our view, proper analysis of the child's best interests in this case would further require a personal interview of the child by the GAL and a supplemental report and recommendation to the court by the GAL.
Judgment Reversed and Cause Remanded.
 ROGERS, P.J. and PRESTON, J., concur.
[1] Although Brook has subsequently married and her last name is now Lamar, for ease of discussion we shall use her maiden name throughout this opinion.
[2] The October 6, 2006 Judgment Entry was rendered by Judge Gretick, sitting by assignment.
[3] The August 31, 2006 Decision was rendered by Judge Gretick, sitting by assignment. The Decision also ordered Troy's counsel to journalize the Decision for formal entry. The journalized version submitted by Troy's counsel then took the form of the October 6, 2006 Judgment Entry from which this appeal is based.
[4] R.C. 3109.04(E)(2)(a) governs modification of a shared parenting decree when both parents jointly move for such a modification. However, we note that this subsection is not applicable to the present case as Troy and Brook did not jointly move to modify the terms of their shared parenting plan.
[5] As cited in Fisher v. Hasenjager: See In re Beekman, 4th Dist. No. 03CA710, 2004-Ohio-1066 at ¶ 14("[T]he plain language of [R.C. 3109.04(E)(2)(b)] permits modification of a shared parenting plan upon a finding that the proposed modifications are in the best interest of the child, and does not require a finding that the child's circumstances have changed since the prior decree");Morrison v. Morrison (Nov. 15, 2000), 9th Dist. No. 00CA0009 ("[P]ursuant to R.C. 3109.04(E)(2)(b), a trial court may modify a shared parenting decree solely on a determination of the best interest of the child" (Emphasis added); Meyer v. Anderson (Apr. 18, 1997), 2nd Dist. No. 96CA32 (in dicta) ("[E]ven a flagrant failure by the court to comply with the seemingly less stringent demands of (E)(2)(b)").
[6] This matter is presently before the Supreme Court of Ohio on review of an order certifying a conflict addressing the following issue: "Is a change in the designation of residential parent and legal custodian of children a `term' of a court approved shared parenting decree, allowing the designation to be modified solely on a finding that the modification is in the best interest of the children pursuant to R.C. 3109.04(E)(2)(b) and without a determination that a `change in circumstances' has occurred pursuant to R.C. 3109.04(E)(1)(a)?"Fisher v. Hasenjager (2006), 112 Ohio St.3d 1404, 858 N.E.2d 816
(Table).
[7] We note that Brook's motion is not entitled "Request for a Second In Camera Interview" or "Request for Supplemental In Camera Interview."
[8] Our review of the record reveals that the juvenile court did not conduct the hearing as scheduled for September 1, 2006 to address Troy's objections to the Magistrate's Decision; instead, the court issued its Decision and Judgment Entry without conducting a hearing. *Page 1